**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 24-10602
Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

JESSE JAMES BERTETTO,

*Defendant-Appellant.*

————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:22-cr-00169-SDM-TGW-1

————————————

Before LAGOA, ABUDU, and ANDERSON, Circuit Judges.

PER CURIAM:

Jesse James Bertetto appeals the substantive reasonableness of his 324-month sentence for distributing, possessing, and receiving child pornography. He argues that his sentence is unreasonable

because the district court improperly balanced the 18 U.S.C. § 3553(a) factors and did not give sufficient weight to his mitigating factors.  The only issue before this Court is whether the sentence is substantively unreasonable.  Because we find that Bertetto's sentence is substantively reasonable, we affirm the sentence.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

In December 2021, Homeland Security Investigations Tampa ("HSI") received a tip from the National Center for Missing and Exploited Children ("NCMEC") that an individual under the username "jojomegadisxorse" was using the instant messaging application Kik to send child pornography.  The tip reported that the user had uploaded seven videos depicting child pornography between July 21, 2021, and July 30, 2021, from multiple IP addresses.  HSI agents identified three individuals associated with the IP addresses, one of whom was Bertetto.  HSI agents executed a search warrant at the residence associated with the IP addresses in January 2022.  Bertetto was not present during the search, but eight other individuals were present, including five minors.  Two of the minors were Bertetto's children.  One of the individuals present, Stephanie Barnes, told the agents that Bertetto was her husband and that she had discovered child pornography on his phone approximately one week prior to the search.  Barnes also told the agents that the Volusia County Sheriff's Office ("VCSO") had searched her previous residence based on a tip linking child pornography to the residence in December 2020.  The VCSO seized her phone, Bertetto's phone, and other electronics at this time.

K.B., a 17-year-old girl living in the household, later disclosed that Bertetto had sexually abused her. Agents subsequently seized her phone. That day, HSI agents executed a search warrant on Bertetto's person at his place of work. Agents seized Bertetto's iPhone and searched his vehicle with his consent. Bertetto told agents that he watched a lot of pornography because he had a pornography addiction, and he stated that he received a lot of "pop ups" on his phone. The forensic examination of Bertetto's iPhone revealed that it contained approximately 156 images and approximately 25 videos depicting child pornography. The images showed the sexual abuse of prepubescent minors, pubescent minors, and infants and/or toddlers.

Bertetto's web history also revealed that he had accessed links on a photo sharing website that contained images of prepubescent females. Eight of the links had been removed due to "objectionable content, such as Child Exploitation Material, Violent Extremism, or Bestiality." Agents also determined that Bertetto had used the username "Kinkyoun" on Kik, and a search of his Kik messages revealed chats in which he had requested child pornography in exchange for sending child pornography.

The VCSO told HSI agents that their December 2020 search warrant was based on a tip that Kik had made to NCMEC, reporting that Kik user "klorgen78" had uploaded 27 images of child pornography. The VCSO stated that it had seized Bertetto's iPhone 7 and that it was in the process of forensically examining the phone. HSI agents executed a search warrant on that phone in May 2022,

uncovering approximately 8,737 images of child pornography and approximately 4 videos of child pornography.  Bertetto's name is associated with all the user accounts on both cellular phones searched by HSI agents, including the Kik accounts.  Bertetto is responsible for a total of 8,893 images and 29 videos of child pornography.  Pursuant to U.S.S.G. § 2G2.2, comment. (n.6), each video is considered the equivalent of 75 images.  Bertetto is thus accountable for 11,068 images of child pornography.

In January 2023, a federal grand jury charged Bertetto by superseding indictment on four counts: (1) distributing child pornography, in violation of 18 U.S.C. § 2252(a)(2), (b)(1) (Count One); (2) receiving child pornography, in violation of 18 U.S.C. § 2252(a)(2), (b)(1) (Count 2); (3) possessing child pornography depicting a prepubescent minor and a minor under the age of 12 years, in violation of 18 U.S.C. § 2252(a)(4)(B), (b)(2) (Count Three); and (4) possessing and accessing with intent to view child pornography depicting a prepubescent minor and a minor under the age of 12 years of age, in violation of 18 U.S.C. § 2252(a)(4)(B), (b)(2) (Count Four).  A jury found Bertetto guilty on all counts.

Bertetto's presentencing investigation report ("PSI") states that Bertetto had not clearly demonstrated acceptance of responsibility as of completion of the presentence investigation.  It notes that he forced the government to take the case to trial and that he had not admitted to his guilt.  The four counts were grouped for guideline calculation purposes pursuant to U.S.S.G. § 3D1.2(d).

Pursuant to U.S.S.G. § 3D1.3(b), the offense level for the group corresponded to the count producing the highest offense level. Counts One and Two resulted in the highest offense level. The resulting base offense level was 22, pursuant to U.S.S.G. § 2G2.2(a)(2). The material involved a prepubescent minor or a minor under the age of 12, enhancing the offense level by 2 points under U.S.S.G. § 2G2.2(b)(2). Pursuant to U.S.S.G. § 2G2.2(b)(3)(B), the offense level was enhanced by five points because Bertetto distributed child pornography in exchange for valuable consideration other than pecuniary gain. Because Bertetto's conduct involved material portraying sadistic or masochistic conduct or the sexual abuse of an infant or toddler, his offense level was increased by four levels under U.S.S.G. § 2G2.2(b)(4)(A) and (B). The offense level was enhanced by 5 levels under U.S.S.G. § 2G2.2(b)(5) because Bertetto had engaged in a pattern of sexual abuse or exploitation of a minor, specifically of his 17-year-old sister, K.B. Because the offense involved the use of a computer or interactive computer service for the possession, distribution, or receipt of the material with intent to view it, Bertetto's offense level was increased by two levels, pursuant to U.S.S.G. § 2G2.2(b)(6). (Id. ¶ 44). Finally, the offense level was increased by 5 points because the offense involved 600 or more images, pursuant to U.S.S.G. § 2G2.2(b)(7)(D). The resulting adjusted offense level was 45. Pursuant to the sentencing table in Chapter 5, Part A of the Guidelines, the offense level was treated as a level 43. Bertetto received a criminal history score of zero, resulting in a criminal history category of I.

The PSI stated the following details about Bertetto's family history.  Bertetto reported in a June 2022 mental health evaluation that he experienced many years of psychological and emotional abuse as a child, and that his mother placed him in foster care.  His father was charged with sexually abusing him in 1999 and  Bertetto was placed in foster care in 2000 for one year because of violence and a lack of basic necessities in the home.  Court records revealed that Bertetto's stepfather physically abused him, that both his mother and stepfather were unemployed, and that neither his mother nor his stepfather had benefited from professional help or intervention services.  Bertetto's half-sister, K.B., informed authorities that Bertetto had sexually abused her between the ages of 12 and 16,  the last incident of abuse occurring in May 2021.  Bertetto's father filed a petition for domestic violence injunction against him on K.B.'s behalf in January 2022.  Bertetto was diagnosed with post-traumatic stress disorder and "adjustment disorder with mixed anxiety and depressed mood" following this evaluation.  The PSI stated that Bertetto had been unemployed since April 2023 and listed his most recent employment as a diesel mechanic for a trucking company from January 2023 until April 2023.

Pursuant to 18 U.S.C. § 2252(a)(2), (b)(1), the statutory minimum prison term for Counts One and Two was 5 years and the statutory maximum was 20 years.  Under 18 U.S.C. § 2252(a)(4)(B), (b)(2), the statutory maximum term of imprisonment for Counts Three and Four was 20 years.  The total offense level of 43 and criminal history category of I resulted in a guideline imprisonment

range of life, but the maximum sentence was limited by statute, resulting in a guideline term of 960 months.

Attached to the PSI were numerous victim impact statements, written by children who were depicted in images and videos accessed by Bertetto, as well as parents, psychologists, and attorneys representing the victims. The statements detailed the significant mental and emotional harm caused to these children by the abuse they suffered and the knowledge that videos and images of their abuse was still circulating the internet. The probation office recommended a sentence of 324 months' imprisonment, with 240 months each for Counts One and Two, running concurrently, and 84 months each as to Counts Three and Four, running concurrently with one another but consecutive to Counts One and Two. The recommended restitution amount was $108,000. The recommended downward variance was based on the fact that a guideline sentence of 960 months is essentially a life sentence, and Bertetto should be given the opportunity to make amends by paying restitution to the victims.

Further, the probation officer noted Bertetto's history of foster care and childhood abuse as mitigating factors. In its sentencing memorandum, the government requested that the court impose a guideline sentence of 960 months' imprisonment. It argued that Bertetto's conduct justified a guideline sentence due to the volume of child sexual abuse material ("CSAM") he possessed, the heinous nature of the content, and the fact that Bertetto distributed CSAM.

It asserted that Bertetto posed "an extraordinary danger" to children because of his pattern of exploiting minors. In his sentencing memorandum, Bertetto requested a below-guideline sentence. Neither the government nor Bertetto submitted objections to the PSI. At sentencing, the court confirmed that Bertetto had not objections to the factual contents of the PSI or its calculations.

During his sentencing hearing, Bertetto called Lawrence Benes, a licensed mental health counselor who completed Bertetto's initial mental health evaluation. Benes stated that he found Bertetto to have PTSD, adjustment issues, and showed some symptoms of dissociative disorder. Benes stated that Bertetto began experiencing abuse at around age five or six, and that the abuse continued into his teens. He also testified to his belief that therapy could help prevent Bertetto from reoffending.

The government again asked that the court impose a guideline sentence of 960 months. It noted that, despite having his phone seized in 2020, Bertetto was found to be engaging in the same conduct in 2022. It also asserted that Bertetto was actively engaged in conversations with the purpose of sending and receiving child pornography, some of which included children as young as five years old. The government highlighted Benes's testimony that Bertetto exhibited a flat effect, as well as the fact that he still had not accepted responsibility to argue that he posed a great threat to public safety. It also noted the history of hands-on abuse of his stepsister. Bertetto then requested that the court consider his lack of criminal history and post-arrest conduct as mitigation.

The court stated that sentencing in cases like Bertetto's was particularly difficult due to the range of conduct that can be involved, from passive consumption of child pornography to active production of content. It stated that there was a broad range of sentences available. It also noted that it was rare for a qualified mental health professional to testify to a causative relationship between a defendant's abuse and his criminal conduct and asserted that "[t]here are a lot of people who were abused as a child who don't engage in such activity." The court then stated that, when calculating sentences, judges consider "the policies and guidelines of the sentencing commission and the advisory guideline range that's derived from those guidelines." It also stated that judges "consider the applicable statutory penalties," as well as "the presentations of counsel, both oral and in writing," and the defendants' PSIs.

Finally, the district court stated that judges consider the § 3553(a) factors, and it noted that Bertetto and the government addressed the factors in their sentencing memoranda. The court asserted that the nature of the offense was "more prominent in this situation" because "it was a prolonged course of conduct." It stated, "that it's bothersome that [Bertetto] continued to engage in this conduct after [he] became aware that law enforcement was aware of [his] activity." But the court also noted that it considered Bertetto's background, and that it considered him "to be a diesel mechanic with an iPhone and a computer and not a full-time manufacturer, producer, or distributor of child pornography." The court stated that it wished to impose a sentence that encouraged

respect for the law, and consequently that the "sentence should not be viewed by a reasonable and informed and disinterested person as either excessively and unduly harsh, for no constructive reason, nor unduly lenient." Protecting the community the court's "the primary consideration," and that it was statutorily required to consider deterrence. Finally, the court stated that it considered avoiding unwarranted sentencing disparities.

The court found that a 960-month sentence was greater than necessary to accomplish the statutory purposes of sentencing and that such a sentence "should be reserved for some of the . . . more severe offenders," like those "that procure or provide children for the manufacture, distribution, sale . . . of these hideous movies." Bertetto was sentenced to 324 months' imprisonment. Specifically, Bertetto was sentenced to 240 months as to Counts One and Two, running concurrently, and 84 months as to Counts Three and Four, running concurrently with each other but consecutively to Counts One and Two.

## II.    STANDARD OF REVIEW

We generally apply "the familiar abuse-of-discretion standard" when reviewing the substantive reasonableness of a sentence. *Gall v. United States*, 552 U.S. 38, 46 (2007). The district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in determining the sentence, or makes clearly erroneous factual findings. *United States v. Barrington*, 648 F.3d 1178, 1194 (11th Cir. 2011). The abuse-of-discretion standard is a

deferential one, and "it is only the rare sentence that will be substantively unreasonable." *United States v. McQueen*, 727 F.3d 1144, 1156 (11th Cir. 2013). "The party challenging the sentence bears the burden to show it is unreasonable in light of the record and the § 3553(a) factors." *United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010).

## III.    ANALYSIS

Sentences must be procedurally and substantively reasonable. *See Gall*, 552 U.S. at 51. Because Bertetto does not challenge the procedure reasonableness of his sentence, the only issue before us is whether the sentence is substantively reasonable. A district court must impose a "sentence sufficient, but not greater than necessary, to comply with the purposes set forth" in § 3553(a)(2), which are: the need for the sentence to reflect the seriousness of the offense, promote respect for law, provide just punishment, afford adequate deterrence, protect the public, and provide the defendant with needed correctional treatment. 18 U.S.C. § 3553(a)(2). The district court must also consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the types of sentences that are available; (3) the appropriate types of sentences and sentencing range established by the sentencing guidelines; (4) policy statements by the Sentencing Commission; (5) the need to avoid sentencing disparities between similarly situated defendants; and (6) the need to provide restitution. *Id.* § 3553(a)(1), (3)-(7). We consider "the totality of the circumstances" when determining the substantive reasonableness of

a sentence. *United States v. Pugh*, 515 F.3d 1179, 1191 (11th Cir. 2008) (quoting *Gall*, 552 U.S. at 51).

Further, a "district court does not need to discuss or state each factor explicitly." *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008). We do not take a court's failure to discuss certain mitigating evidence to mean "that the court erroneously ignored or failed to consider this evidence in determining" a sentence. *United States v. Amedeo*, 487 F.3d 823, 833 (11th Cir. 2007) (quotation marks omitted).

We acknowledge that there are a range of reasonable sentences for a given offense. *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc). We will vacate a "sentence if, but only if, we 'are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case.'" *Id.* (quoting *Pugh*, 515 F.3d at 1191). We may find that a district court has abused its discretion when it "unjustifiably relies on any single § 3553(a) factor, fails to consider pertinent § 3553(a) factors, bases the sentence on impermissible factors, or selects the sentence arbitrarily." *Grushko*, 50 F.4th at 19. But "[a] sentence that suffers from one of these symptoms is not per se unreasonable." *Id.* Instead, it is subject to review based on "the totality of the circumstances to determine the sentence's reasonableness." *Id.*

Bertetto argues that his sentence is substantively unreasonable because it is greater than necessary to protect the public and

further the goals of sentencing. First, he argues that his sentence was substantively unreasonable because the district court record lacks substantive discussion of his history of childhood physical and sexual abuse, and how the court weighed his traumatic background in calculating his sentence.  Second, Bertetto argues that the district court improperly focused on the seriousness of the offense and did not give adequate weight to his lack of criminal record and low recidivism risk.  He asserts that his sentence appeared to be based almost entirely on the seriousness of the offense and that § 3553(a) does not permit courts to base a sentence on any one single factor. Lastly, he argues that his sentence is greater than necessary to achieve the purposes set forth in the sentencing guidelines, noting that his 27-year sentence is on the high end of sentencing outcomes among similarly situated defendants.

As a general matter, we "appreciate the institutional advantage that district courts have in applying and weighing the Section 3553(a) factors in individual cases." *Pugh*, 515 F.3d at 1190-91. "In the face of this discretion, it is only the rare sentence that will be substantively unreasonable. *McQueen*, 727 F.3d at 1156.

Turning to Bertetto's first and second argument, the fact that the court did not weigh Bertetto's mitigating factors as heavily as he would have does not mean that the court improperly weighed the sentencing factors.  While the court did not explicitly discuss all of Bertetto's mitigating factors, such as his lack of criminal history, it is not required to do so.  *See United States v. Al Jaberi*, 97 F.4th 1310, 1330 (11th Cir. 2024). It is also within the district

court's discretion to weigh some factors more heavily than others. *See United States v. Grushko*, 50 F.4th 1, 19 (11th Cir. 2022). And the district court did explicitly discuss some of Bertetto's mitigating factors, such as his personal background and the fact that he was not a full-time producer or distributer of child pornography. And the court did not focus exclusively on one factor, as Bertetto claims. It simply weighed more heavily the nature of Bertetto's offenses and the need to protect the community. It was "within its sound discretion" to do so. *Grushko*, 50 F.4th at 19.

We are similarly not persuaded by Bertetto's final argument. Ordinarily, we expect that a sentence within the guidelines range is a reasonable one. *United States v. Dorsey*, 554 F.3d 958, 962 (11th Cir. 2009). Further, "[a] sentence well below the statutory maximum indicates reasonableness." *United States v. Thomas*, 108 F.4th 1351, 1357 (11th Cir. 2024), *cert. denied*, 145 S. Ct. 1102 (2025). Bertetto's 324-month sentence is well below the guideline range of 960 months.

## IV.    CONCLUSION

Because the record evidence shows that the district court considered and weighed the 18 U.S.C. § 3553(a) factors and his sentence was well below the guideline range, we find the district court's sentence substantively reasonable and affirm the sentence.

**AFFIRMED.**